This case involves the failure of the trial court and defense counsel to take steps to evaluate Mr. Bernbaum's competence to enter a plea and also defense counsel's failure to investigate Mr. Bernbaum's potential defense regarding his competence at the time that the robbery was committed. These failures violated Mr. Bernbaum's 5th, 6th, and 14th amendment rights to due process and effective assistance of counsel. Can I just ask you about, as far as the competency at the time of the plea goes, was there anything in the record to indicate to the judge that this was an issue? Absolutely, Your Honor. There were a number of red flags during the course of the proceedings that indicated that there should have been a hearing regarding Mr. Bernbaum's competence. First of all, the facts of the offense themselves, Mr. Bernbaum committed a robbery of a casino where he worked, where he had been fired a few months before they knew him, and he asked for casino chips, which is not something that you can easily convert to cash. Outside of the casino, they have no value whatsoever. He dropped the chips before leaving the casino when he was approached by security, and then he displays a gun. He tells the police that he was doing this as a suicide mission, essentially, that he wanted to kill himself. That information was included in a rest report, which was provided to the court, so the court had that information to begin with. Additionally, at the preliminary hearing, Mr. Bernbaum's public defender, in making a bail pitch, indicated that Mr. Bernbaum had severe depression problems, that he was on medication and doing better, which is actually does not seem to be correct. In fact, Mr. Bernbaum was, at that point, off the medication, but that was a representation made to the court. I guess that cuts the other way. I was asking, here's the district judge, or whatever the judge is, saying, you know, there has to be some indication to the judge that the man needs a competency hearing at the time, right? Correct. And the district attorney there also acknowledged that he was on a suicide mission, so everybody had acknowledged that that was what happened with the crime. After that, though, there is a bail motion filed by defense counsel, which says that Mr. Bernbaum was undergoing psychological counseling prior to his detention, and that counseling was not available at the jail. There was also a motion for substitution of counsel filed, in which Mr. Bernbaum himself says that he asked his lawyer to file a motion to get psychological counseling, and his lawyer refused to do that. Additionally — Or did he plead to? He pled guilty to robbery with use of a deadly weapon. A robbery. And how — what was his sentence? His sentence was seven years plus an equal and consecutive term of seven years for the weapon enhancement. Oh, is that what it was? Okay. Right. He's now out of prison, right? He's out of prison and off. And this is a remarkable history to this case for those who are very concerned that habeas cases be presented to the courts within a year, or else somehow the Constitution won't function. It's taken this individual over 10 years to get his habeas petition heard in the courts. And as you read the record of the lengthy delays while he's trying to get his rights vindicated, I just wonder whether there's any concern about whether rights are being vindicated under the habeas laws. It really is not very helpful. If he has a valid case, he may or may not. Not very helpful after he served over 10 years and completed his sentence to have a court decide that he was deprived of his rights. Yes, Your Honor. Mr. Birnbaum was in prison until 2001, and then I believe he was released from — I'm sorry. He was in prison until 1999, and then he was released from parole sometime in 2003. So he's completed his term of supervised release as well? Yes, he has. He has. But the case has slowly wound its way through the system until we are here. In the pre-sentence report, there was also information regarding his competence. Now, at that point, he had pled guilty, but the judge had not actually entered a judgment of conviction yet. And in that report, it says that he has always suffered from severe depression. He's currently seeing a therapist in the Clark County Detention Center. He has had numerous days at mental health hospitals, and he's been prescribed Prozac and Klonopin. So the judge was aware of that. And the court itself at sentencing said that Mr. Birnbaum had some kind of death wish, and he was very depressed. Was there evidence that — or have you developed evidence that he would not have pled guilty? Had he — or that he felt that he had no choice? Mr. Birnbaum felt that his lawyer was not pursuing any sort of defense on his behalf, and obviously the defense in this case would have been some sort of diminished capacity. Unfortunately, Mr. Birnbaum was never given the opportunity in the state court to develop any of those facts. In post-conviction, he was given neither a lawyer nor a hearing. What relief do you want at this stage? At this stage, Your Honor, we believe that the relief — Well, I can understand why you would prefer not to have a conviction if he had a choice, but, you know, if he's offered — I mean, if you were to prevail and the state would have ended to say, all right, we'll let you plead to something, would it really make much difference at this point what you plead to? I mean, you're either going to have a conviction of — it's going to count against him in the future or you're not. And the alternative to that is to have another trial, and then what in the next trial? Do you think there's no chance he'd get a heavier sentence? That's a possibility. That certainly is a risk that Mr. Birnbaum has chosen to run by proceeding with this case. And under — I assume that the — if we — if we were to accept your argument basically on the counsel issue, as opposed to the judge's duty to respond to conduct a competency hearing, but if we were to find an ineffectiveness at counsel claim, what we would have to do is remand for an evidentiary hearing. That's true, Your Honor. That's true. So this case will then go on another five years while Mr. Birnbaum is doing whatever he's doing. It may, Your Honor. It may. Well, it'd be a nice case maybe to develop some law for the textbooks, but other than that, it's really not hardly an ideal process to be doing this at this stage of the proceedings. No. However, to Mr. Birnbaum, the fact of a felony conviction, he had no prior felony convictions before this, so that is something that affects him tremendously. If I may reserve the rest of my time for rebuttal. Yes. Thank you. May it please the Court. My name is Conrad Hafen, and I represent the Respondent in this appeal. There are three reasons why this Court should affirm the district court's ruling denying Mr. Birnbaum's habeas petition. First, there was not a bona fide dispute about appellant's competence. Second, the state court record revealed that appellant knowingly and voluntarily entered his guilty plea. If he was under medication at the time? Well, we don't know if he was under medication at the time he entered his guilty plea. The record on its face illustrates that he probably was – well, that he was lucid. He was articulate. He was responding adequately to the questions. He was taking drugs at the time, being prescribed medication. I don't know what those drugs are. Well, it was Prozac, according to what Mr. Birnbaum indicates. That was one. Then there was another one also. According to the record, he was prescribed two drugs that were in the report. That's correct. Prozac and the other one slips from my mind, Your Honor. But I can say that at the time that he unconditionally waived his plenary hearing, he indicated that he was on medication and he was doing much better. However, at time of sentencing, he indicated that he was off the medication and his counsel indicated that it was probably an overdose of the medication that may have caused his problems earlier. So it kind of goes both ways. He's fine when he's on medication and he's okay when he's off the medication as well. I would like to mention one thing, though, in regard to the ineffective assistance claim, and that is that his trial counsel did file a motion. If you look at page 62 of the excerpt of records, defense counsel filed a motion in the district court asking the court to O.R. his client so that he could go ahead and obtain some mental health counseling. So to allege that he didn't do anything in response to the concerns that he had. But that doesn't really go to whether his counsel investigated his mental health and mental condition to see whether that should be a defense in his trial, that whether he obtained his records. Look to see. I gather he's been confined on and off in some kind of institutions for mental problems. His counsel, as far as we know, didn't look into any of that, didn't look into his mental health, although there were certainly sufficient warnings that he might have a serious mental problem. Well, you know, you raise an interesting question, because in my mind there's two separate things in regard to competence. At the time that the defendant committed the crime, it's clear, based on the evidence, that he knew exactly what he was doing. He purposefully walked into the MGM, he was carrying his badge of an employee, he purposely walked right into the cage, and he demanded $450 worth of chips. It's true, not to interrupt, but it's true that's what he did. And, in fact, the only defense he had was temporary insanity, right? I mean, somebody who may assert that defense can appear on a surveillance camera to look completely calm and purposeful, right? Well, and we don't know what type of issues were going on in MGM. That really was his only defense. I mean, you had him cold, didn't you? Well, absolutely. I mean, there's no mistaken identity. Nobody even disputes what happened. Absolutely. And I guess defense counsel has got to look at that and decide, you know, is that something that he wants to pursue, or after talking to his client, does he want to try and flee? If there were a hearing somewhere in the state court, in the district court, we might well find out that counsel did a superb job and made a very well-reasoned decision not to do any more than he did. Are you talking about a competency hearing, or are you talking about a hearing on the ineffective assistance claim? No, a hearing on the ineffective assistance. You know, we might find out he did an excellent job. He thought through all of this. He checked certain things. We don't know. But there's no record. Nobody gave this person a hearing in the state court or in the federal court. So all we have is what's here. We don't know whether his counsel did anything. Well, we know. Well, we do. We know that he talked to his client about defenses. And the reason we know that is because the plea memorandum says that. And during the colloquy between Mr. Bierbaum and the district court judge, he was canvassed. And part of that canvass was, did you have an opportunity to talk to your defense attorney? We don't know whether he did any checking on his mental condition, whether he got records, whether he inquired into his condition, whether he made any examination of whether he had any kind of a mental health defense. Yeah, but we know that they talked about that as a defense. Right. Because Mr. Bierbaum indicated that he did talk to his client or, excuse me, talk to his lawyer about all possible defenses. Right. But we don't know if Mr. Bierbaum was sane at the time, because we don't have any hearing with his lawyer saying, you know, what his conversations went. And what I did to make sure that, you know, he was sane then, that it wasn't going to be a good defense, that it wasn't going to get us anywhere. We don't know any of that. Well, we know that he was certainly confident at the time that he entered his plea. I don't know that either. Well, we know that because of the, again, the colloquy between Mr. Bierbaum and the judge. Mr. Bierbaum's answers were appropriate to the questions that he was being asked. We know that he reviewed the plea memorandum, and in that plea memorandum, he agreed and signed that he was entering this plea voluntarily and knowingly. And as part of that plea, he discussed all defenses with his attorney, that he knew that he had certain rights, right to go to trial, right to confront, cross-examine witnesses, and he was waiving all those rights. In addition to that, there's evidence in the record to indicate that Mr. Bierbaum, by his own motion, was actively involved in helping to prepare the defense of this case at one point. He says he was involved in researching, in contacting witnesses, in working with his attorney. So we do know that he was confident to assist in his defense. Well, we don't know that. We know that he was doing some things, but, you know, people can work very hard on, you know, making sure that they're receiving things clearly on their teeth with aluminum foil. I mean, they can work very hard on things, but we don't know what it is they're working on. Well, the standard is, is there substantial evidence. What kind of witnesses was he working to contact for his defense? Excuse me? What kind of witnesses was he working hard to contact for his defense? Well, he doesn't mention that in his pro per motion, but he does indicate that he was involved in contacting witnesses, he was researching. And don't forget, the standard is, Your Honor, the honor, Your Honor, the standard is, was there substantial evidence of incompetence? And there's no substantial evidence. That's the standard. This court has to apply under Fernandez's, this court's own ruling. Right. Was there substantial evidence of incompetence? We're talking about the failure to investigate as ineffective assistance of counsel, though. I mean, I understand you're talking about a different issue now on whether it's pure competency or not. But it's difficult to see how a, if the only, really the only defense available to an attorney is involved in the mental health of his client, and he doesn't investigate that independent of talking to his client who is supposedly not in the best of mental health, that that can possibly comport with the standards we expect of defense attorneys. Well, one thing, though, that the Court has to take into consideration is the interaction that this trial counsel is having with his client. From all indications in the record, after he's arrested, from the time of the waiver of the conditional, unconditional waiver of the plenary hearing all the way up through the time of sentencing, he's lucid. He's rational. He understands what he's doing. And so I guess a trial attorney has to take into consideration all of that as a factor in deciding at what point do I have to pursue whether he could form, formulate a mens rea in order to commit the crime. But here he's saying, I only did it because I wanted to commit suicide. I mean, that has to put out red flags for everyone, doesn't it? Well, I agree. But you also have to factor in what's happening afterwards as well. You know, we have cases that indicate that even if the client instructs the attorney not to pursue a mental health defense, the attorney has at least the duty to investigate the mental health defense. And here it appears, at least on this record, and as Judge Reinhart said, it may well be that the attorney made an excellent strategic choice. But we don't know that. But it appears on this record the attorney didn't do that. Right. Of course, under Strickland you have both prongs. And I guess the second prong is, but for this conduct, would he have decided to go to trial? I don't believe so, given the evidence that they had in this case. Would the defendant have decided to go to trial? And he said he would have. It's an area of plea, right? And they certainly haven't met that burden. And they have to meet both prongs, as this Court well knows. So even if you find that maybe the trial counsel's conduct was below or fell below an objective reasonable standard, the next prong is, as we all know, is would he, but for that conduct, would he have said, okay, go to trial? And they haven't shown that. Thank you, Your Honor. Can you just address that one point, because that was bothering me? It's not very clearly set forth in your papers that, but for the ineffectiveness of assistance of counsel, that he would have gone to trial. What in what you put before us indicates that? I think that the two motions that Mr. Birnbaum filed to try to get rid of his lawyer indicate that he would have done something different. He felt like his lawyer wasn't doing anything for him, and that was of grave concern to him. This is a lawyer who, two and a half weeks after Mr. Birnbaum is telling police, I committed this robbery because I want to die, is waiving preliminary hearing for Mr. Birnbaum to plead guilty. That plea doesn't happen for like six or seven months down the road, presumably because Mr. Birnbaum is not really thrilled about going through with the plea. And he expresses that in those motions to the court, which are really ignored by the judge. What's your best argument on Strickland prejudice? I mean, assuming we have ineffective assistance of counsel for failure to investigate, where does it get you in terms of Strickland prejudice? Well, under Strickland and Hill, the question is whether Mr. Birnbaum would have entered a plea if his lawyer had done something else. If his lawyer had developed a defense to show that Mr. Birnbaum was not competent at the time of the robbery, which is what he says in his own words. It's a pretty tough defense, though, to sell to a jury on an armed robbery. And the facts are undisputed as to the crime. Well, somebody who will make some of the choices he's making might choose to go to trial, but do we have the record warrant finding that justifies a hearing on the second prong? Is there enough to show that he would have gone to trial in the record now? Have you made a prima facie showing that he would have gone to trial? I think that the fact that he tried to dismiss his counsel twice and that there was a seven-month period from the time his lawyer first said he was going to enter a plea until he actually did enter a plea. But then he did enter the plea. Right, but it also took a couple tries. There was a change of plea hearing where they stopped and the judge said, no, we're just going to go forward with trial. So it wasn't he was not expressing a real willingness to do this. Okay, thank you. Thank you. Case just argued will be submitted.
judges: Reinhardt, Thomas, Restani